UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KATHLEEN MAYS, Ph.D.,                                      :

                  Plaintiff,                         :

           -against-                                    :

                                           :

WASHINGTON SQUARE INSTITUTE FOR                 :
PSYCHOTHERAPY AND MENTAL HEALTH,           :
GERD H. FENCHEL, Ph.D.,                                    :

                Defendants.                      :
-------------------------------------------------------------X

**JUDGE JONES**

**'07 CIV 5976**

**COMPLAINT AND
DEMAND FOR JURY
TRIAL**

RECEIVE
JUN 22 2007
U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff, by her attorneys, Broach & Stulberg, LLP, complaining of Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

      1.     This action is brought to remedy discrimination based upon sex, discrimination

based upon sexual harassment, and unlawful retaliation in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human

Rights Law, New York Executive Law § 291 *et seq.,* and the New York City Human Rights Law,

New York City Administrative Code § 8-101 *et seq.*

## JURISDICTION AND VENUE

      2.     On or about September 12, 2006, Plaintiff Kathleen Mays ("Plaintiff") filed a

Charge of Discrimination against Defendant Washington Square Institute for Psychotherapy and

Mental Health ("Defendant WSI" or "WSI") with the United States Equal Employment

Opportunity Commission ("EEOC ") and with the New York State Division of Human Rights,

complaining of the acts of sex discrimination, sexual harassment and unlawful retaliation

complained of herein.

3.      On March 22, 2007, the EEOC issued a "Right to Sue" letter, which Plaintiff received on April 3, 2007.

4.      Plaintiff has complied fully with all administrative prerequisites of Title VII.

5.      Jurisdiction of the Court over plaintiff's claims under Title VII is invoked pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

6.      Jurisdiction of the Court over plaintiff's claims under the New York State Human Rights Law and the New York City Human Rights Law is invoked pursuant to the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 (a).

7.      Venue is proper within this District, pursuant to 28 U.S.C. § 1391 (b)(1), as Defendant WSI resides in the Southern District of New York, within the meaning of 28 U.S.C. § 1391 (c). Venue is also proper within this District, pursuant to 28 U.S.C. § 1391 (b)(2), as the events giving rise to plaintiff's claim occurred within the Southern District of New York.

## PARTIES

8.      Plaintiff Kathleen Mays is female and resides at 1930 Astoria Park South, Astoria, New York. Plaintiff is a psychotherapist duly licensed to practice in New York State. She holds a Ph.D. in psychology and a Masters Degree in psychiatric nursing. Plaintiff is an "employee" as defined by Title VII, 42 U.S.C. § 2000e (f), the New York Human Rights Law, Executive Law § 292, and the New York City Human Rights Law, Administrative Code of the City of New York §8-102, and she is a member of a protected class.

9.      Defendant WSI is a not-for-profit institute chartered to educate and train psychotherapists. Defendant WSI consists of a Treatment Center, which services patients, and a

2

Training Program, which provides graduate-level psychotherapy course work and clinical training. Defendant WSI is an "employer" as defined in Title VII, 42 U.S.C. 2000e (b); Section 292(4) of the New York State Human Rights Law, Executive Law § 292 (4), and Section 8-102(5) of the New York City Human Rights Law, Administrative Code of the City of New York § 8-102(5) . Defendant WSI's primary place of business is 41-51 East 11th Street, New York, New York.

10.     Defendant Gerd Fenchel, Ph.D. ("Defendant Fenchel") is the Director of Defendant WSI. He is an "employee" and "agent" for the purposes of the New York State Human Rights Law and the New York City Human Rights Law.  His principal place of business is 41-51 East 11th Street, New York, New York.

**STATEMENT OF FACTS**

11.     In 1990,  Plaintiff commenced employment with Defendant "WSI" as a Clinical Supervisor.   In this capacity, Plaintiff supervised staff psychotherapists working at WSI's Treatment Center.  Plaintiff worked approximately six hours per week as a Clinical Supervisor and was paid at an hourly rate for that time.

12.     In 1993, in addition to her position as a Clinical Supervisor, Plaintiff became a faculty member and Training Analyst of Defendant WSI's Training Program. As a faculty member, Plaintiff taught one class per week per semester.  As a Training Analyst, Plaintiff conducted the required psychoanalyses of the candidates for Defendant WSI's Training Program.

13.     In 2000, in addition to her supervisory, teaching and Training Analyst positions,. Plaintiff became Coordinator of Professional Affiliations and Special Projects at Defendant WSI. As Coordinator, Plaintiff oversaw the hiring of staff psychotherapists, faculty and supervisors,

3

and conducted community outreach efforts and other projects as assigned by Defendant Fenchel.

14.    In or around late 2000 or early 2001, Defendant Fenchel offered to groom Plaintiff to be his successor as Director. Plaintiff accepted the offer. Defendant Fenchel told Plaintiff that, in order for her to succeed him, he would have to recommend her as his successor to WSI's Board of Trustees.

15.    Beginning in or around 2001, Defendant Fenchel required Plaintiff to train with him for the Director position (in addition to the time Plaintiff spent working as Clinical Supervisor, faculty member and Training Analyst). Although the training initially consisted of one business lunch per week, Defendant Fenchel soon required Plaintiff to spend increasingly more time training with him.

16.    In or around the fall of 2002, Defendant Fenchel appointed Plaintiff as Assistant Director of WSI. Starting in or around 2003, Plaintiff worked between 30 to 35 hours per week at Defendant WSI and received an annual salary (as opposed to hourly rates for Plaintiff's various services). As Assistant Director, Plaintiff reported directly to Defendant Fenchel.

17.    In 2004, Defendant Fenchel started to sexually harass Plaintiff. On several occasions during that year, he tried to hug Plaintiff without warning. On each occasion, Plaintiff told Defendant Fenchel that she was uncomfortable with his hugging her. In response, Defendant Fenchel became irritated and criticized Plaintiff, saying, in words or effect, "What are you talking about … we're like family here. Don't be so uptight."

18.    In 2004, Defendant Fenchel regularly told Plaintiff details of his personal home life, and pressed Plaintiff to reciprocate. When Plaintiff expressed reluctance to do so, he criticized Plaintiff as having, among other things, "problems with intimacy" and being "aloof."

4

19.    In or around September 2005, Defendant Fenchel's sexually harassing behavior escalated. Defendant Fenchel frequently and repeatedly harassed Plaintiff physically, verbally and psychologically. Examples of that harassment are described below.

20.    From in or around September 2005 until in or around August 2006, when Plaintiff was constructively discharged, Defendant Fenchel frequently (at least twice per week) attempted to hug Plaintiff. Each time, Plaintiff pulled away from Defendant Fenchel and told him that she was uncomfortable. In response, Defendant Fenchel derided Plaintiff, making comments such as, "you're a good Christian girl - - so idealistic."

21.    From in or around October 2005 until in or around August 2006. Defendant Fenchel frequently and openly kissed Plaintiff on the cheek and tried to kiss Plaintiff on the lips at work. To avoid kissing Defendant Fenchel, Plaintiff had to physically push him off of her and tell him to leave her alone. On several occasions, Plaintiff was unable to avoid Defendant Fenchel and was forced to kiss him on the lips. As an example of the frequent and outrageous physical harassment that Plaintiff was forced to endure, on December 12, 2005, while Plaintiff was in a hallway at Defendant WSI, Defendant Fenchel barreled towards Plaintiff with open arms, attempting to hug and kiss her. Plaintiff physically backed away and told Defendant Fenchel that she was uncomfortable. Defendant Fenchel then physically shoved Plaintiff and walked away. Upon information and belief, later that day, Defendant Fenchel asked Defendant WSI's Administrative Coordinator, "What's wrong with Kathy?"

22.    From at least in or around October 2005 until in or around August 2006, Defendant Fenchel frequently made sexually offensive comments to Plaintiff at work. Such comments included, without limitation, the following: (a) in or around late November 2005,

5

during a business lunch, Defendant Fenchel asked Plaintiff if she ever thought of lesbianism; (b)

in or around November 2005, Defendant Fenchel said to Plaintiff, in words or effect, "Tell your

mother that I love you, even though you are a handful"; and (c) in December 2005, at a business

meeting to which Plaintiff had worn a sweater set, Defendant Fenchel said, in words or effect,

"You looked so beautiful when you took off your sweater, I was hoping you'd take off

everything."

23.    From in or around November 2005 until August 2006, on several occasions,

Defendant Fenchel asked Plaintiff to have a non-work-related dinner alone with him. He

criticized Plaintiff for declining his invitations.

24.    Defendant WSI had no procedures for reporting sexual harassment. While

Defendant WSI had a procedure for staff therapists to make complaints, that procedure required

the staff therapists to make their complaints to Defendant Fenchel. Despite the absence of a

sexual harassment reporting procedure, between in or around November 2005 and in or around

January 2006, Plaintiff reported Defendant Fenchel's sexually harassing conduct to Defendant

WSI's Administrative Coordinator, former Senior Psychiatrist Registrar, Marketing Consultant,

certain staff psychologists and certain faculty members. Each of them told Plaintiff, in words or

effect, that Defendant Fenchel had a reputation for such behavior. Plaintiff also repeatedly

complained to Defendant Fenchel about his conduct, but he rejected those complaints and

criticized Plaintiff for making them.

25.    In or around the end of January, 2006 or the beginning of February 2006,

Defendant Fenchel warned Plaintiff not to tell anyone about the "goings on between us" because,

in words or effect, to do so would be "very bad" and would "malign my name." Plaintiff stated,

in words or effect, "so after harassing me, you're now threatening me?" Defendant Fenchel stated, "You mean sexual harassment?" to which Plaintiff nodded affirmatively.

26.     From in or around December 2005 until in or around August 2006, Defendant Fenchel sent Plaintiff letters, which contained sexually offensive comments, reprimanded and threatened Plaintiff for rejecting his -- as he called them – "indecent proposals," and/or conditioned Plaintiff's future promotion on Plaintiff having a sexual relationship with him. For example, in a December 1, 2005 letter, Defendant Fenchel wrote, "the way you response [sic] to me these days seems to be as follows (a) I make indecent proposals to you, (b) I don't give you what you want (I wonder about that - maybe I give you more than that in one way and less in another), (c) that you don't care about a MAN'S feelings or (d) that you are so mistrustful and suspicious that it does not matter what I do." In a February 15, 2006 letter, Defendant Fenchel stated, "I realized now how important it is for you to be my successor … I would feel free to recommend that the Board consider you my successor – you certainly have put a lot of work into it. There is one caveat – and this one is important to me. We must work on developing a better relationship – I do need a very good friend and to have some unity at the Institute as well as the Board. Good friends are hard to find."

27.     As documented in Defendant Fenchel's February 15, 2006 letter, Defendant Fenchel conditioned an offer to Plaintiff to succeed him as Director upon Plaintiff entering into a sexual relationship with him. Plaintiff objected to that quid pro quo arrangement in a letter to Defendant Fenchel dated February 15, 2006. In or around the time Plaintiff sent that letter, Defendant Fenchel told Plaintiff, in words or effect, that he could not recommend Plaintiff to the Board of Trustees "as long as our relationship is so poor."

7

28.    In or around March 2006, Defendant Fenchel asked Plaintiff, in words or effect, "Would you be interested in me if I was not married?"  Plaintiff responded emphatically, "No."

29.    In or around May 2006, Defendant Fenchel told Plaintiff that he would recommend her as his successor at the Board of Trustee's June meeting.  At or about the same time, Defendant Fenchel told Plaintiff that he loved her and that he would give Plaintiff money if she ever needed it.  Plaintiff told him that she wanted neither his love nor his money; that she only wanted to be paid for her work.

30.    At the June 2006 Board of Trustees meeting, which Plaintiff attended, Defendant Fenchel did not recommend Plaintiff to be his successor.  After the meeting, Plaintiff overheard Defendant Fenchel tell the Chairman of the Board, who, upon information and belief, is also Defendant Fenchel's personal accountant, that he (Defendant Fenchel) wanted to make Plaintiff a beneficiary of one of his life insurance policies.  Subsequently, Plaintiff met with Defendant Fenchel and asked him why he had not recommended her as his successor, as he had said he would do.  Defendant Fenchel responded, "I felt that it was too soon.  But I'm making you a beneficiary of one of my life insurance policies .  So, you see, I do love you."  Plaintiff told Defendant Fenchel that she did not want to be a beneficiary of his life insurance policies and did not want his love, but only wanted him to honor his professional commitment to her.  Upon information and belief, Defendant Fenchel had not recommended Plaintiff to be his successor because she had rejected his sexual advances.

31.    On or about August 11, 2006, while Defendant Fenchel was on vacation, Defendant WSI's bookkeeper told Plaintiff that Defendant Fenchel had instructed her not to pay Plaintiff while Plaintiff was on vacation in August 2006, as he had previously agreed to do.

8

Plaintiff called Defendant Fenchel to discuss the matter. Defendant Fenchel angrily refused to

talk to Plaintiff. Upon information and belief, Defendant Fenchel refused to pay Plaintiff for her

vacation time in August 2006 in retaliation for her rejecting his sexual advances.

32.    After Plaintiff spoke with Defendant Fenchel on or about August 11, 2006, she

could no longer emotionally, physically or mentally bear to tolerate the sexual harassment,

sexually hostile work environment and retaliation to which Plaintiff had been subjected at

Defendant WSI. As a result, on or about August 11, 2006, Plaintiff was compelled to resign

from Defendant WSI. This constituted a constructive discharge.

## AS AND FOR A FIRST CAUSE OF ACTION

### Discrimination Based on Sex in Violation of Title VII

33.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1

through 32 herein as though recited at length herein.

34.    Defendant WSI is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

35.    At all times pertinent herein, Plaintiff was an "employee" of Defendant WSI

within the meaning of 42 U.S.C. § 2000e(f).

36.    Plaintiff, a female, is a member of a class protected by Title VII.

37.    Defendant WSI intentionally discriminated against Plaintiff and subjected

Plaintiff to a persistent, pervasive hostile work environment by engaging in the conduct

referenced in paragraphs 1 through 32 herein, solely on the basis of Plaintiff's sex, in violation

of 42 U.S.C. §2000e-2.

38.    Defendant WSI intentionally discriminated against Plaintiff with respect to

compensation, terms, conditions and privileges of employment, and constructively discharged

9

Plaintiff, as referenced in paragraphs 1 through 32 herein, on the basis of Plaintiff's sex, in violation of 42 U.S.C. § 2000e-2.

39.    Upon information and belief, Defendant WSI's conduct, as referenced in paragraphs 1 through 32 herein, was part of a pattern and practice of intentional sex discrimination at Defendant WSI, in violation of 42 U.S.C.§2002e-2.

40.    The intentional discrimination against Plaintiff and the hostile work environment to which she was subjected, as referenced in paragraphs 1 through 32 herein, detrimentally affected Plaintiff.

41.    The intentional discrimination against Plaintiff and the hostile work environment to which she was subjected, as referenced in paragraphs 1 through 32 herein, would detrimentally affect a reasonable female in the same position as Plaintiff.

42.    Defendant committed the unlawful acts referenced in this First Cause of Action with malice and/or with reckless indifference to the federally protected rights of Plaintiff.

43.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages and other damages, including, but not limited to, pain and suffering, humiliation, mental anguish, loss of life's pleasures, depression, anxiety, stress, panic and damage to reputation, as a result of Defendant WSI's discriminatory acts, unless and until this Court grants the relief requested herein.

44.    Defendant WSI failed to exercise reasonable care to prevent and correct promptly the unlawful discrimination referenced in paragraphs 1 through 32 herein. Defendant did not offer, and Plaintiff did not fail to take advantage of, any legitimate opportunities to prevent or correct the unlawful discrimination referenced in paragraphs 1 to 32 herein. Defendant WSI is

10

therefore strictly liable for the unlawful discrimination complained of herein.

45.     No previous application has been made for the relief requested herein.

## AS AND FOR A SECOND CAUSE OF ACTION

### Discrimination Based on Sex in Violation of New York State Human Rights Law

46.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 45 herein as though recited at length herein.

47.     At all pertinent times herein, Defendant WSI was Plaintiff's "employer" within the meaning of Section 296(5) of the New York Human Rights Law, Executive Law § 296(5).

48.     At all pertinent times herein, Plaintiff was an "employee" of Defendant WSI within the meaning Section 296(6) of the of New York Human Rights Law, Executive Law §296(6).

49.     Plaintiff, a female, is a member of a class protected by the New York Human Rights Law, Executive Law §291, *et seq.*

50.     Defendant WSI intentionally discriminated against Plaintiff by taking the adverse actions referenced in paragraphs 1 through 32 herein solely on the basis of Plaintiff's sex.

51.     Defendant WSI's discriminatory treatment of Plaintiff was sufficiently severe and/or pervasive to make a reasonable woman believe that the conditions of employment were altered and that the working environment was hostile or abusive.

52.     Defendant WSI constructively discharged Plaintiff and discriminated against Plaintiff in other terms and conditions of employment, as referenced in paragraphs 1 through 32 herein, in violation of Section 296 of the New York Human Rights Law, Executive Law § 296.

11

53.    Upon information and belief, Defendant WSI's discriminatory treatment of Plaintiff was part of a pattern and practice of sex discrimination at Defendant WSI .

54.  Defendant WSI committed the unlawful acts referenced in this Second Cause of Action with malice and/or willful or wanton indifference for its legal obligations in the circumstances.

55.    Defendant Fenchel, as the Executive Director of the Defendant WSI, instigated, promulgated and actually participated in the unlawful acts described in paragraphs 1 through 32 herein. Defendant Fenchel committed the unlawful acts referenced in this Second Cause of Action with malice and/or willful or wanton indifference for his legal obligations in the circumstances.

56.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages and other damages, including, but not limited to, pain and suffering, humiliation, mental anguish, loss of life's pleasures, depression, anxiety, stress, panic and damage to reputation, as a result of Defendant WSI's and Defendant Fenchel's discriminatory acts unless and until this Court grants the relief requested herein.

57.    No previous application has been made for the relief requested herein.

### AS AND FOR A THIRD CAUSE OF ACTION

### Discrimination Based on Sex in Violation of New York City Human Rights Law

58.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 57 herein as though recited at length herein.

59.    At all pertinent times herein, Defendant WSI  was Plaintiff's "employer" within the meaning of Section 8-102 of the New York City Human Rights Law, Administrative Code §

12

8-102.

60.    At all pertinent times herein, Plaintiff was an "employee" of Defendant WSI within the meaning of Section 8-102 of the New York City Human Rights Law, Administrative Code § 8-102.

61.    Plaintiff, a female, is a member of a class protected by the New York City Human Rights Law, New York City Administrative Code §8-101, *et seq.*

62.    Defendant WSI intentionally discriminated against Plaintiff by taking the adverse actions referenced in paragraphs 1 through 32 herein solely on the basis of Plaintiff's sex.

63.    Defendant WSI's discriminatory treatment of Plaintiff was sufficiently severe and/or pervasive to make a reasonable woman believe that the conditions of employment were altered and that the working environment was hostile or abusive.

64.    Defendant WSI  constructively discharged Plaintiff and discriminated against Plaintiff in other terms and conditions of employment, as referenced in paragraphs 1 through 32 herein, in violation of Section 8-107 of the New York City Human Rights Law, Administrative Code § 8-107.

65.    Upon information and belief, defendant's discriminatory treatment of Plaintiff was part of a pattern and practice of sex discrimination at Defendant WSI.

66.    Defendant WSI committed the unlawful acts referenced in this Third Cause of Action  with malice and/or willful or wanton indifference for its legal obligations in the circumstances.

67.    Defendant Fenchel, as the Executive Director of Defendant WSI, instigated, promulgated and actually participated in the unlawful acts described in paragraphs 1 through 32

13

herein. Defendant Fenchel committed the unlawful acts referenced in this Third Cause of Action with malice and/or willful or wanton indifference for his legal obligations in the circumstances.

68.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages and other damages, including, but not limited to, pain and suffering, humiliation, mental anguish, loss of life's pleasures, depression, anxiety, stress, panic and damage to reputation, as a result of defendant's discriminatory acts unless and until this Court grants the relief requested herein.

69.     No previous application has been made for the relief requested herein.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Unlawful Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)

70.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69 herein as if recited at length herein.

71.     Plaintiff engaged in protected activity by complaining to Defendant WSI and to Defendant Fenchel about the sexual harassment and sexually hostile work environment to which she was subjected.

72.     In response to Plaintiff's complaints, Defendant WSI and Defendant Fenchel harassed Plaintiff and subjected her to adverse employment actions, including, but not limited to, constructively discharging her from employment. The harassment and adverse actions referenced herein materially altered the terms and conditions of Plaintiff's employment at WSI.

73.     Upon information and belief, Defendant WSI and Defendant Fenchel harassed Plaintiff and subjected her to adverse employment actions in retaliation for Plaintiff's opposition to the sexual harassment and sexually hostile work environment at WSI, and in order to

14

discourage Plaintiff from opposing Defendant's sexually hostile work environment and unlawful discriminatory employment practices.

74.    In violation of 42 U.S.C. § 2000e-3, Defendant WSI constructively discharged Plaintiff and discriminated against Plaintiff with respect to terms, conditions and privileges of her employment, on the basis of her opposition to discriminatory practices prohibited by 42 U.S.C. § 2000e-2.

75.    Defendant committed the unlawful acts referenced in this Fourth Cause of Action with malice and/or with reckless indifference to the federally protected rights of Plaintiff.

76.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages and other damages, including, but not limited to, pain and suffering, humiliation, mental anguish, loss of life's pleasures, depression, anxiety, stress, panic and damage to reputation, as a result of Defendant WSI and Defendant Fenchel's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

77.    No previous application has been made for the relief requested herein.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Unlawful Retaliation in Violation of New York State Human Rights Law

78.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 77 herein as if recited at length herein.

79.    Plaintiff engaged in protected activity by complaining to Defendant WSI and to Defendant Fenchel, about the sexual harassment and sexually hostile work environment to which she was subjected.

80.    In response to Plaintiff's complaints referenced in herein, Defendant WSI and

15

Defendant Fenchel harassed Plaintiff and subjected her to adverse employment actions, including, but not limited to, constructively discharging her from employment at Defendant WSI. The harassment and adverse actions herein materially altered the terms and conditions of Plaintiff's employment at Defendant WSI.

81.    Upon information and belief, Defendant WSI and Defendant Fenchel harassed Plaintiff and subjected her to adverse employment actions, in retaliation for Plaintiff's opposition to the sexual harassment and sexually hostile work environment at Defendant WSI and in order to discourage Plaintiff and other female employees from opposing Defendant WSI's sexually hostile work environment and unlawful discriminatory employment practices.

82.    In violation of Section 296 of the New York State Human Rights Law, Executive Law § 296, Defendant WSI has constructively discharged Plaintiff and has discriminated against Plaintiff with respect to terms, conditions and privileges of her employment, on the basis of her opposition to discriminatory practices prohibited by Executive Law § 296.

83.    Defendant WSI committed the unlawful acts referenced in this Fifth Cause of Action with malice and/or willful or wanton indifference for its legal obligations in the circumstances.

84.    Defendant Fenchel, as the Executive Director of Defendant WSI, instigated, promulgated and actually participated in the unlawful acts described in this Fifth Cause of Action. Defendant Fenchel committed the unlawful acts referenced in this Fifth Cause of Action with malice and/or willful or wanton indifference for his legal obligations in the circumstances.

85.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages and other damages, including, but not limited to, pain and suffering,

16

humiliation, mental anguish, loss of life's pleasures, depression, anxiety, stress, panic and damage to reputation, as a result of Defendant WSI's and Defendant Fenchel's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

86.    No previous application has been made for the relief requested herein.

## AS AND FOR A SIXTH CAUSE OF ACTION

### Unlawful Retaliation in Violation of New York City Human Rights Law

87.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 86 herein as if recited at length herein.

88.    Plaintiff engaged in protected activity by complaining to Defendant WSI and to Defendant Fenchel about the sexual harassment and sexually hostile work environment to which she was subjected.

89.    In response to Plaintiff's complaints referenced herein, Defendant WSI and Defendant Fenchel harassed Plaintiff and subjected her to adverse employment actions, including, but not limited to, constructively discharging her from employment at Defendant WSI. The harassment and adverse actions referenced herein materially altered the terms and conditions of Plaintiff's employment at Defendant WSI.

90.    Upon information and belief, Defendant WSI and Defendant Fenchel harassed Plaintiff and subjected her to adverse employment actions as referenced herein, in retaliation for Plaintiff's opposition to the sexual harassment and sexually hostile work environment at Defendant WSI and in order to discourage Plaintiff and other female employees from opposing Defendant WSI's sexually hostile work environment and unlawful discriminatory employment practices.

17

91.     In violation of Section 8-10(7) of the New York City Human Rights Law, Administrative Code 8-107(7), Defendant WSI has constructively discharged Plaintiff and has discriminated against Plaintiff with respect to terms, conditions and privileges of her employment, on the basis of her opposition to discriminatory practices prohibited by § 8-107(7).

92.     Defendant WSI committed the unlawful acts referenced in this Fifth Cause of Action with malice and/or willful or wanton indifference for its legal obligations in the circumstances.

93.     Defendant Fenchel, as the Executive Director of Defendant WSI, instigated, promulgated and actually participated in the unlawful acts described in this Sixth Cause of Action. Defendant Fenchel committed the unlawful acts referenced in this Sixth Cause of Action with malice and/or willful or wanton indifference for his legal obligations in the circumstances.

94.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages and other damages, including, but not limited to, pain and suffering, humiliation, mental anguish, loss of life's pleasures, depression, anxiety, stress, panic and damage to reputation, as a result of Defendant WSI's and Defendant Fenchel's discriminatory acts unless and until this Court grants the relief requested herein.

95.     No previous application has been made for the relief requested herein.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### Liability of Defendant Fenchel Under New York State Human Rights Law

96.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 95 herein as if recited at length herein.

97.     Defendant Fenchel is an agent of Defendant WSI for purposes of New York

Human Rights Law, Executive Law § 296.

98.    Defendant Fenchel is the individual described throughout the Complaint who has subjected Plaintiff to a sexually hostile work environment, discrimination based on sex, and unlawful retaliation.

99.    As such, Defendant Fenchel is personally liable to the Plaintiff for causing her to suffer the damages described throughout the Complaint.

100.    No previous application has been made for the relief requested herein.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

### Liability of Defendant Fenchel Under New York City Human Rights Law § 8-107 (1)

101.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 100 herein as if recited at length herein.

102.    Defendant Fenchel is an agent of Defendant WSI.

103.    Defendant Fenchel is the individual described throughout the Complaint who has subjected Plaintiff to a sexually hostile work environment, discrimination based on sex, and unlawful retaliation.

104.    Defendant Fenchel violated New York City Human Rights Law § 8-107 Administrative Code, and as such, is personally liable to the Plaintiff for causing her to suffer the damages described throughout the Complaint.

105.    No previous application has been made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(a)    declaring that the acts and practices complained of herein are in violation of Title

19

VII, the New York State Human Rights Law and the New York City Human Rights Law;

      (b)     enjoining and restraining permanently the violations alleged herein;

      (c)     directing Defendant WSI and Defendant Fenchel to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment, and making her whole for all earnings and benefits she would have received but for Defendant WSI's discriminatory and retaliatory treatment, including, but not limited to, wages, commissions, pension benefits, life and accident insurance benefits and all other lost benefits and compensation;

      (d)     enjoining Defendant WSI and Defendant Fenchel from harassing or engaging in any acts of reprisal or retaliation against Plaintiff for seeking to obtain her statutory right not to be discriminated against on the basis of sex and from otherwise interfering with the rights of Plaintiff;

      (e)     directing Defendant WSI and Defendant Fenchel to take such affirmative action as is necessary to assure that the effects of the unlawful employment practices complained of herein are eliminated and do not continue to affect Plaintiff's employment opportunities;

      (f)     directing Defendant WSI to pay Plaintiff compensatory and punitive damages for Plaintiff's claims under Title VII, pursuant to 42 U.S.C. § 1981A;

      (g)     directing Defendant WSI and Defendant Fenchel to pay Plaintiff compensatory damages, including but not limited to damage to reputation, humiliation and mental anguish, pursuant to New York Executive Law §297 (4)(c), and the New York City Human Rights Law;

      (h)     awarding Plaintiff the costs of this action together with reasonable attorney's fees, as provided in 42 U.S.C. § 2000e-5(k), and New York Executive Law § 297 (4)(c), and New

York City Administrative Code § 8-502(f); and

    (i)    granting Plaintiff such other and further relief as this Court deems necessary and proper.

Dated:  June 22, 2007
        New York, New York

                    BROACH & STULBERG, LLP
                    Attorneys for Plaintiff

                    By:  _____
                        Robert B. Stulberg (RS2734)
                        One Penn Plaza, Suite 2016
                        New York, New York 10119
                        (212) 268-1000

## <u>DEMAND FOR A JURY TRIAL</u>

    Plaintiff, by and through her above-signed counsel, hereby demand, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in the above-captioned action.